I represent a juvenile whom the government sought to prosecute as an adult in the Eastern District of Virginia. After a transfer hearing under the Juvenile Justice and Delinquency Act, the District Court judge denied transfer on the merits and as a matter of constitutional law because the statute charged a crime which carried a mandatory life sentence. After a merits hearing months later where the juvenile testified and expert testimony was introduced, the government took an interlocutory appeal and days before their brief was due it moved to dismiss the appeal. It then moved to dismiss the Juvenile Act case in the District Court and it sought to have the juvenile plead guilty to a Commonwealth of Virginia murder charge. The juvenile asked the District Court to dismiss the case with prejudice. Subsequently the government sought to disclose information from the juvenile transfer hearing as well as a statement that the juvenile had given to law enforcement authorities to the adult defendants in a related case. And we objected to the disclosure of those materials. At this point, Your Honor, the juvenile is now 19 years old. At the time of the offense, which was in 2013, he was 16 years old. We're asking the court to remand the case to the District Court so that dismissal can be with prejudice and not, as it stands now, without prejudice. We believe for two reasons it should be with prejudice. One, the Act provides that the only way to prosecute this juvenile, that once the government initiates a prosecution under the Juvenile Justice Act, it can only prosecute him under the Juvenile Justice Act. It can no longer prosecute him as an adult. It can't wait, for example, until he turns 21 and then charge him as an adult. In this case, what the government sought to do, in our opinion, is to use the state as a proxy for what it could not do. Once it realized that it was going to lose the case, and in fact, in a related case, this court has found that that mandatory life charge cannot be used to prosecute a juvenile. It's unconstitutional because the Supreme Court said that a juvenile cannot be sentenced to mandatory life. So this juvenile under- What bar is there to what happened here? I mean, is there some legal impediment? Because my understanding is that prosecution often dismisses an indictment or moves to dismiss an indictment without prejudice, and unless there's some prejudice to the defendant, and fear of prosecution is not generally thought to be prejudice, or unless the prosecution is acting in bad faith, those motions are pretty routinely, are fairly routinely granted, almost as a matter of course. I don't think there's been a finding here that there was prejudice or bad faith on the part of the prosecution in doing what it did. Well, it is not- We don't believe it happens very often in juvenile cases. In fact, the government has only cited three cases where they claim this took place. One of them is- None of them- All of them are distinguishable. Two of them have no explanation whatsoever. And the third involved a case where there may be a state prosecution, but the delay was minimal. We believe there's two issues. We believe there is prejudice to the juvenile, and we believe the government's conduct in this case was as a matter of law, bad faith. We're not saying that there's personal animus. We're just saying that as a matter of law, if you apply Rule 48-type analysis, for example, in a case, Smith, U.S. v. Smith, this court found that a prosecutor's dismissal of a prosecution under Rule 48 after the jury had been impounded because it didn't like the panel was bad faith for purposes of Rule 48. And we believe this is similar to that. I mean, the prejudice- wouldn't prejudice in this situation be if the defendant had lost a witness or was going to lose a witness or- There's no claim that the delay in this case- You don't have a speedy trial act claim. We do. Under the Juvenile Justice Act, he was supposed to be tried within 30 days. After the transfer- After the district court denied transfer, he had a right to- But I thought the speedy trial act was told by the appeal of the denial of the motion to transfer. Well, that's our point. The government's the one who took the appeal, and then- They had a right to do that. And then days before the opening brief, they dismissed the appeal. They then summoned the juvenile, his counsel, to their offices and had the commonwealth attorney offer a plea to a murder prosecution, which provided that the juvenile should cooperate with the federal authorities in the prosecution of the adults, even though the commonwealth attorney had no knowledge of the case, had not investigated the case. But why should we be taking over these kinds of matters? I mean, the district court is familiar with not only this prosecution, but with the closely related prosecution of the other MS-13 members and the respective roles of them and how the interplay is going on between the state and federal authorities and between the prosecution of the juvenile and the prosecution- Hold on a second. Sorry, Your Honor. I apologize. The prosecution of the other MS-13 members. I mean, the district court is right in the middle of it, and we're talking about a discretionary call on the part of a district court and findings with respect to bad faith or prejudice, which a district court, being in the middle of it, would seem to have a better perspective than we would. So why should we... All I'm saying is why should we jump into the middle of this unless there is some legal bar to the district court, to the government either moving to dismiss or the district court granting the motion? I'm not sure I saw the legal bar to either one of those things. Under Rule 48, which is how the government moved to dismiss the juvenile complaint, this court in Smith found that a tactical decision by the government to dismiss the case so that they could get a better jury is prejudice. It subjects the prosecution to dismissal with prejudice. In U.S. v. Loud Hawk, the Supreme Court found that Embarker v. Wingle, the Supreme Court found that anxiety and the risk of living under suspicion is a prejudice that a defendant who has to sit and wait for his prosecution suffers. In a juvenile situation, this kid has been waiting since he was 16 and he still has this potential murder prosecution hanging over his head that the state has said they will prosecute him, but only after the feds are finished prosecuting their case and only after all of this happens. He may lose some of the benefits. He will be 20, I believe, this year. He may lose some of the benefits of prosecution as a juvenile once the state... That sounds something like a Speedy Trial Act claim or what have you. You're citing Speedy Trial Act precedents. That is one of the issues. The Juvenile Prevention Act provides for very speedy resolution of juvenile cases for that very reason, so that the juvenile can be rehabilitated. This is a case where this kid acted in this alleged murder under duress. He was hooded. That's what he says. He was there and he participated in the murder. That's what he says in his statement. The government does not dispute that he was hooded when he was moved to this place. The government does not dispute that he threw up after this event. We're talking about the event. He participated in the event. Under duress. Probably so. That's what he says. The government doesn't dispute it. People died. He acted under duress. He withdrew after he had participated. The issue has not been resolved, but it's an issue. That's what he said. I didn't make this up. He did not say that he participated in the murder. He participated. His testimony was that by the time he is forced to use a knife on the victim, the victim was dead. That was the defendant's claim. I regard that as participation, but you can call it whatever you want. The question is whether the charge is murder, would that amount to a murder in first degree or not. But that was in 2013. Where is your client now? My client voluntarily left the United States. Have you been in consult with him with respect to this appeal? Yes. Does he have any likelihood that he's ever going to be able to get back into the United States? He has no criminal felony convictions or prosecutions. This is the only matter if he had been prosecuted as a juvenile. How would you say he was? ICE deported him, not deported him, allowed him to voluntarily depart. So he's back in El Salvador in his home country. But he is subject to being prosecuted. The Commonwealth of Virginia indicated to his counsel that he would be finished prosecuting the case. And where are the other cases? Some of them have been tried. I think all of them have been tried, haven't they? I thought there was one that had to be retried because there was a mistrial. Well, that might have been retried, but they've all been tried once, right? And some of them were on appeal, have there been appeal decisions? Right. Are we talking about a realistic prospect of prosecution? Or is this something that is very speculative? I mean, that's a big problem because it's a murder. If he travels anywhere, he could be extradited to the state of Virginia for prosecution. We were told explicitly by the Commonwealth's attorney, and we're offered a plea deal. And we were told, if you do not accept this plea deal, we will prosecute him as soon as the feds finish their prosecution. But we believe that- Can I ask you about your Brady claim? What was wrong with the district courts disclosing to the adult defendants the transcript of the transfer hearing or whatever? That could be, within the district court's view, that could be material exculpatory information. Shouldn't the district court have bent over backwards to make the Brady disclosures and give the adult defendants a fair trial? Absolutely, if there had been a determination that it was Brady. The government said it may be Brady, and then- But the district court had a hearing on this, and the district court, as I understand it, at that hearing took into account- Don't shake. I really respect the fact that you- I'm looking at my wife and trying to- Committed to your case. It's a good thing. Thank you, Your Honor. The district court never made- But what I'm concerned about is that I thought at the hearing that the district court had balanced the interest of the adult defendants in getting the Brady material with the privacy and safety concerns raised by your client, which was- I thought what he was supposed to do. Your Honor, we don't dispute that had the district court done that, had there been a showing that this was Brady, that the district court has a right to make a balancing decision and produce- But in this case, that was not the case. The district court never made a determination. It relied on the government's assertion that this may be Brady. But the interesting thing is in a subsequent hearing in this case where one of the adult defendants asked the district court to give our client immunity because they believed that he had Brady information, which they wanted to use in their trial, the government stood up and said, we believe that is not Brady. So the information- Is this an abusive discretion question? No, we believe he never made an in-camera review. We believe it's accurate. The government never made an assertion this is Brady, and the court never made an in-camera independent determination. So no one made a decision, made a determination- What other basis would there be? The government said it may be Brady, then denied it was Brady at a subsequent hearing, and the court accepted the government's position. That it was Brady. That it was Brady. That it may be Brady. We asked that 60 pages were produced. I have been practicing for many years. I have never had the government produce 60 pages and said this is Brady. There may have been Brady statements within, although as I say the government- So what are we going to do about that now? Our concern is that that information is still out there, it was never- So it's out there. Direct the- The toothpaste is out of the tube. Direct the district court to take back all that information. That's no solution for your client. I mean, what do you want? What is your ideal order? Write our opinion for us, as they say in the Supreme Court. What does this opinion look like? It says before a district court can do this in the future, it must make a finding of Brady. And, in fact, the only case the government cited to the district court, that's exactly what happened. Is that an advisory opinion? Exactly. We don't issue advisory opinions. What relief do you want in your case? Well, we think it's a mootness issue. I mean, we think this could come up again if he gets prosecuted by the state. Well, why can't we just vacate the order as mootness? We want those papers to be returned. We don't want those papers to be in the lawyer's offices where they can continue to be sitting to be available to other people. And we don't want the government in the future to disclose this without a full determination by a district court that, in fact, it was Brady. In camera review, that's what happened in the Ninth Circuit case that the government cited. And, in fact, what the Ninth Circuit did, since the district court hadn't done it, what the Ninth Circuit did said, upon review, it's not Brady, and it shouldn't be disclosed. Are you asking us to do some sort of capable repetition, but evading review, exception to mootness? Yes, sir. But we also want those papers to be brought back to the district, to be taken back. I don't know how to... But, you know, to just come back, isn't a horse out of the barn? But at least those... This young man is under a green light already because he tried to withdraw from the MS-13 after that killing. And, according to the government, MS-13 kills people even just for admitting that they're members of MS-13, or just for giving it, even if they don't testify, just for providing any information about the organization. All right, thank you. Thank you, Your Honor. Thank you, Counselor, because you've reserved some time for robust trial. Yes, sir. Thank you. Mr. Cavazone, let's hear your side of it. Good morning, Your Honors, and may it please the Court, Christopher Cavazone for the United States. The juvenile's challenge to the district court's dismissal order here advances two unsupportable and, indeed, subversive arguments. First, the juvenile contends that under the Juvenile Justice and Delinquency Act, the district court was required to dismiss this case with prejudice. In pressing this argument, the juvenile strains the text and logic of the statute well past breaking the point and, even more fundamentally, asks the judiciary to override the executive in a core area of prosecutorial discretion without any credible claim of bad faith by the government or a legally cognizable prejudice to the juvenile. Second, and even more broadly, the juvenile suggests that any dismissal here must, quote, bind state authorities, an argument that runs headlong into foundational principles of double jeopardy and federalism. I want to touch very briefly on the statutory arguments for why the statute here, the Juvenile Justice and Delinquency Act, can't be read in the way that the DB here suggests. And the chief cases here, just looking at the text of the argument, the text of the statute, it makes clear that the Section 5032 is either a venue or a jurisdictional provision that says that if you proceed in federal court, here's how it's done. And there's a case under seal that... What you're saying basically is that there's no textual bar to your making the motion or to the district court granting it. That's correct. And one of the other stronger points about why the text itself makes clear that their whole argument here is that a case must be... Once the federal government certifies that under the Juvenile Justice Act, the case must only be pursuant to the terms of that act. But the act itself contemplates that the federal government can bring juvenile justice proceeding after a state has already adjudicated a crime against the juvenile. And even if the state does not relinquish jurisdiction to the federal government, even if the state does have adequate opportunities for juvenile rehabilitation, as long as the federal government certifies that there's a crime of violence that's been committed and transfers in the interest of justice, the federal district court can go forward consistent with double jeopardy principles and as long as the Pettit policy and other internal... Other than the dual sovereignty document. That's exactly right. So the statute itself doesn't support their argument. Can I ask you a question about the speedy trial claim? You filed an appeal in this case and then dismissed it before you sent it over to the state court. And if we think that the appeal was a pretext to buy yourselves time, would there be a speedy trial claim? No. And I'll come back in a moment to that there is no evidence that the appeal is a pretext. But just addressing the speedy trial issue, appeals are expressly told from speedy trial calculation. And that recognizes many... All appeals, whether pretext or whether to buy time or not. I would say if there's evidence that there's bad faith in seeking an appeal. It would not be a speedy trial issue, but there might be a Rule 48 issue where prejudice could be... If it's bad faith, that's a reason to dismiss it. So then tell us the reason why it wasn't bad faith. These timelines are built in and obviously I can't disclose some of the reasons that the government went into and made this calculation. But the court can surmise some things just based on the record. So we know that the Solicitor General is required to sign off on all appeals that the government takes. And as a matter of statute and law, there's a time frame that's built in that gives the government, for example, 30 days to seek appeal after the district court's order has issued and other time frames that are built in that recognize that the government takes time to seek appeal. In this case, again, without getting into the reasons that the government ultimately dismissed the appeal, I point out that the district court had denied transfer on two bases unlike the other appeal that went forward that they mentioned in their briefs and the opinion... Did the defendant here request that the district court make a finding or allege bad faith on the part of the government or plead prejudice to itself? I mean, just what happened below? The government makes the motion. Did the defendant say, wait a minute, you're making this motion in bad faith and by the way, we would suffer prejudice in the following respects? There were, in much of this, without getting into some of the... Now proceeding, I can say, in the joint appendix, the hearing on the motion to dismiss lays out some of the background. But the government approached the defendant and indicated that the government planned to dismiss the appeal and then after the mandate returned to the district court that the government would... You're not answering my question. When you made the motion, did the defendant then come forward and say this motion is made in bad faith for the following reasons and we're going to suffer prejudice for the following reasons? No. In fact, the defendant was aware beforehand more than a week beforehand that the government was planning to dismiss both the appeal and then after the mandate returned was going to move in the district court. And no finding of bad faith or prejudice was ever made? No finding of bad faith or prejudice was ever made. And no basis for the finding was ever proffered? There is not proffered and there is none. And in fact, as the transcript indicates, there was a request by the government that the government wait a few days before moving to dismiss the appeal. So it is very inconsistent now to be saying that there's bad faith when if that were the case, you think the defendant would be racing the government to the courthouse to file their motion to dismiss before the government could but instead it was, as the transcript indicates, discussions about actually waiting a little while, which the government obviously wouldn't want to do. Can I ask you two fact questions? I couldn't find them in the record. Has the government disclosed the juvenile's identity to the adult gang members' lawyers? To the extent that it was necessary, it was requested and necessary to the attorneys. With an order that they not disclose it to their clients? That is correct. And has there been any subsequent action on that? So that's where the bidding law is there. The text of the protective order said that it may only be disclosed to the clients in the event that there was a deposition or that 30 days before trial. And in this case, I don't believe that those, in light of the way that the material witness warrant was eventually dismissed, do not believe that those ever came about. So under the text of that protective order, which is that... Yeah, I know the protective order. So are the adult defendants aware of the... No, their lawyers are. But they were all part of the same gang and they were all involved in the same murder and it is... Can I ask you one other question, Paul? So what about the juvenile's whereabouts? Has that been disclosed to the lawyers or the current... The government currently does not know... So you couldn't be disclosing that. Potentially in El Salvador, potentially in the United States, potentially elsewhere. The government has no idea right now where this defendant is. Well, do those protective orders that allow that discussion, does that create a live, ongoing disclosure risk? I would say at least as to the... No, both as to the documents and as to the identity. As to the documents, the protective orders make clear that the documents may only be discussed with the clients as necessary for trial or for direct appeal. So one of the issues on mootness that your honors were discussing with defense counsel was could we just... defense counsel saying we'll just have the materials pulled back. If that type of order were made by the district court or by this court, you would have numerous defendants who I'm sure intend to use those documents in the direct appeal. Screaming about having those documents sent back for the order authorizes them to go back. The order automatically calls for the documents to be destroyed or returned upon completion of the direct appeal. It does not authorize discussion or use of the information outside of the case. And we have no reason not to trust the defense counsel in this case. In any case, we'll follow the court's order. Judge Wilkins, I want to get back very quickly to your question just about the... just generally about the case. Just for the court's very brief background. In this case, there were 14 involved participants in 4 violent acts. An attempted murder and 3 murders. 13 of those defendants... The same district judge has been presiding over all of these proceedings. That's right. And 13 were adults for at least one of the violent acts. One of the murders or attempted murder. Two of the murders were particularly gruesome. Involved a beheading and burial of two bodies in the park. I just brought that up as a general sort of caution light to a court of appeals jumping into the middle of these kinds of sort of interim calls. And as you noted to defense counsel, I believe Judge Wilkins said that's right, there are numerous ongoing appeals. All 13 defendants who were eventually tried were convicted. I take that back. All 13 who were indicted were convicted. Seven were tried. Some people pled. Six were convicted in a joint trial. And then partly as a result of a 404B issue where the government had sought to admit evidence from one defendant who was involved in one murder as a juvenile and another as an adult, the district court ultimately severed that defendant because the 404B prejudice. When I approach this case, I look first of all whether there was a textual bar to either the government making this kind of motion or to the district court granting it. And absent the presence of a clear textual bar, which I can't imagine there being because as you pointed out part of the motion lies as an exercise of prosecutorial discretion and whether to grant the motion or not would seem to be a classic matter of district court discretion. So given the fact that making the motion is prosecutorial discretion and granting it would lie at the heart of district court discretion, I can't see why we would wade into what seems to be in the absence of a textual bar to be almost interim discretionary matters. I mean, they don't really seem to be final in any kind of sense. They appear to be sort of interlocutory and interim kinds of judgments. And I believe there's good reason for that double discretion as I think Your Honor is getting at, which is absent a showing of bad faith our criminal justice system would fall apart if the prosecutors had to come in and offer their privileged reasons for pursuing, dismissing, charging, dropping charges, adding charges every time something changed or every time a defendant wanted to make a bald allegation of bad faith. And that's why the standard of review in this case for the district court is abusive discretion and why the government is entitled to that absent a showing of bad faith. This isn't a place where defendants are entitled to go and basically compel the prosecutors to show their worth. Prior to the disclosure order, I thought D.B. did invoke the Fifth Amendment. Initially he did not, but at a later date he did. So having done that, why was it necessary to disclose his identity? The invocation and the transcript of the hearing was not made in time to forestall the government's efforts to make these disclosures before potentially this was removed. So there was the again, in the transcript there's an indication the government counsels, I can give you a page. What is the appealable order here? I'm missing something. I'm sorry? What is the appealable order here? The appealable order. What order is rightly appealed from? Well, that's a good question. There's two notices of appeal that were filed. I understand there are notices of appeal, but do we have an appealable order? The actual litigation occurred in the undersealed case number, and it's the government's position that those are the appealable orders. So what did you say? Those are, it's docket number two a lot of cases here to make sure I've got it all together. But it's 218 and 216 in the undersealed case number which were the two orders both order denying granting the motion to dismiss and denying juvenile motion for reconsideration of its motion for appointing authorities from the government. And then there was a further order in the undersealed case number where the district court denied and overruled the juvenile's objections to producing the materials to the adult defendants. And one reason why an appealable order wouldn't make sense from the adult defendants case is you can't have every potential witness or informant whose materials are turned over to a defendant in the course of trial and consistent with the government's Brady obligations coming into the district court and saying I'm entitled to appeal that I don't want my information disclosed. I think we agree with you that the appealable orders, or at least I do, have to be in this case. But I thought Judge Wilkinson's question was really going to another way of asking what we'd ask the appellant's lawyer is what's the beef if you will? What is being appealed? And I think what you're saying is what is being appealed is the original grant of the motion to dismiss. That's one thing that's being appealed which then led to going to the state court. And what is the other thing that's being appealed is the denial of the defendant, the juvenile's motion not to reveal this information. Is that right? That's correct. Okay. It's just as you say, as you have, and you know this case really well, it's hard to decipher exactly what's in play. But those are the things that are in play. Is that right? Yes. Okay. Unless your honors have further questions, I just close by... But Judge Floyd asked you a question a while ago and I don't know that I ever heard the answer to that question. Do you remember that question? I think I started and then may have gotten sidetracked and I apologize, Judge Floyd. Was it about the identity where you raised the Fifth Amendment prior to the transcript and then the question was why was it then necessary to disclose his identity? In the transcript you'll see the government attorney informing the district court about how the government is seeking to proceed here said we offered to defense counsel basically if you'll tell us now for sure that this juvenile will invoke the Fifth Amendment. We will consider asking your honor to allow us not to make the disclosures at this time because the early disclosures would be moot. Of course, they'll need to be made later, perhaps consistent with Brady's obligations. But we'd consider at least the pressing urge before the juveniles removed is no longer present. That information was not provided or defense counsel is not willing to agree before the government felt the disclosures need to be made that the juvenile would invoke the Fifth Amendment. Eventually, in a related under seal case, there was a material witness proceeding at which the Fifth Amendment was invoked. But that was only after... At the hearing, the government said we won't reveal the identity even to the adult's lawyers if the adult does what? If we have assurances that the juvenile will most definitely invoke. We have assurances that the juvenile will invoke Fifth Amendment rights. I have one final question. You're not seriously contending that he didn't have standing in the adult case, are you? Standing in which case? The point there, I think, would be that opens up a Pandora's box if we have every witness or informant's identity who is disclosed or every witness to a bank robbery who doesn't want his or her name disclosed as part of the government's day-in-day-out Brady allegations can ask the court for an order precluding that and then appeal it. That would seem like opening up Pandora's box especially when there are other avenues especially in this case for the defendant to contest those disclosures. But isn't this an academic question because it was based on the fact that at some point you thought that they'd only filed a notice of appeal in the adult cases but in fact they filed notices of appeal in this case? That's the supplemental appendix in which they clarified that there was the notice of appeal filed. So we really don't have to reach that question. I think that's right. Alright, let's hear further from Ms. Hernandez. The government made a number of mistaken statements of fact. Number one, it says that 18 U.S.C. section 5032 is a venue statute. This court in United States v. Smith 851 F. 2nd 706 and 709 found that once the government files as a matter of statutory construction 5032 found that once the gun files a juvenile complaint pursuant to the statute it must proceed by information and no criminal acts of juvenile delinquency can be filed by the government. So 5032 is not a venue statute pursuant to this court's position in United States v. Smith. Number two, the court asked about... It's not a bar to the prosecution making this kind of motion or the court granting it. You can argue about whether it's a venue statute. The government argued that. We didn't argue that. The government argued that all day long but it's still not a textual bar to what happened. The government moved to dismiss pursuant to Rule 48. The textual bar to moving to dismiss is in Rule 48. Rule 48A says the government may with leave of the court dismiss an indictment information or complaint. The case law under Rule 48 this court Goodson I believe is the primary case but the case law which this court has resolved on many occasions says is it with prejudice or without prejudice and it looks to see whether it's in good or bad faith. With respect to the facts that the government presented to you they're incorrect. This is what happens. First of all, the government moves to dismiss. The case is sealed so we're not getting ECF notices. The district court by noon the next day has dismissed the case. We file immediately an opposition because we want it to be dismissed with prejudice. By the time we filed the opposition the very next day it had been dismissed. So we filed a motion for reconsideration in which we did assert that the government was acting in bad faith. These documents are in the record. We immediately filed a motion objecting to the dismissal without prejudice. That's in the record in the appendix at page 691. We filed a motion for reconsideration in which we did assert bad faith. That's at 704. The district court denied it without addressing that's at appendix 729. You never got any kind of finding  So at a minimum it should be remanded for a finding on the merits of whether it was bad faith. We believe it was bad faith. The government dismissed this case days before it was due to days before... Because we want it with prejudice for two reasons. So the government cannot re-prosecute and so that we can raise double jeopardy in the state of Virginia for the state of Virginia to seek to prosecute him. Virginia, the Commonwealth of Virginia has a double jeopardy statute which would permit I mean it would be subject to litigation but would permit us to assert double jeopardy if the state of Virginia were to prosecute the juvenile. We believe that we have the factual grounds for bad faith under the circumstances. They did not dismiss the companion juvenile case. They pursued it because and they talked to us and they offered the plea agreement before they moved to dismiss the case before your honor. So at a minimum it ought to be explored on the merits. That was part of our argument here that the district court was I don't blame the district court. Ordinarily when a government moves to dismiss the defendant the defendant has a party and says great. The circumstances in this case were different. The district court had no way of knowing what was going on behind the scenes when we were being offered a plea by the Commonwealth of Virginia. Had no way of knowing. The government, it's under seal so it gets filed in court. We don't get a copy of it until, that's not bad faith. They emailed us but we don't get an opportunity to file anything before the district court has decided against us. We move for reconsideration. We set out the facts and we believe the court still did not address the merits of it. Ms. Hernandez, thank you very much. There were a number of other misstatements by the government when it stood up here your honor. I understand that he was not the attorney of record below and this is a dense record. I will try to Do you have a final statement that you want to make? Excuse me your honor. I don't want to cut you off in mid sentence. Thank you your honor. We believe the government acted in bad faith in dismissing this case. And in bad faith in terms of what this court has determined to be legal bad faith under rule 48. We believe that he's entitled to a finding of prejudice in the dismissal of the juvenile adjudication of the juvenile complaint so that he can fully explore all his legal rights. We believe he lives right now under prejudice because he has hanging over his head the potential charge of a murder prosecution without an ability to resolve it. And it can follow him all over the world where he the Commonwealth of Virginia can extradite him if he were to move anywhere, if he travels between borders. So it's a serious and real prejudice and we believe the court should dismiss with prejudice. That's all we're asking. Dismiss the juvenile complaint with prejudice and with respect to the disclosure we in fact ask the judge to proceed as a John Doe instead of disclosing the juvenile's identity. Thank you so much and I see you're court appointed and we very much appreciate your services. Thank you. Thank you for the extra time. Sure. We'd like to come down and greet counsel and then we'll take a brief recess. This honorable court will take a brief recess.
judges: J. Harvie Wilkinson III, Diana Gribbon Motz, Henry F. Floyd